IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM L. BYARD, JR., *et al.*
    *Plaintiffs*,

v.                                                          Civil Action No. ELH-16-755

HONEYWELL INTERNATIONAL INC.,
    *Defendant*.

**MEMORADUM**

Plaintiffs William L. Byard, Jr.; Carrie L. Byard; and Robert L. Byard, the adult children of the late William L. Byard ("Decedent"), filed suit against Honeywell International Inc. ("Honeywell"), defendant, on March 15, 2016.  ECF 1 ("Complaint").  Plaintiffs assert tort claims against Honeywell arising from the death of the Decedent in 2013.  *Id.*

Honeywell manufactured chromium, a heavy metal, at a plant in Baltimore, and the manufacturing process resulted, among other things, in the production of a carcinogenic toxic waste, known as chromium ore processing residues ("COPR").  Plaintiffs claim that Honeywell stored and dumped COPR on land that was adjacent to, and later became part of, the Dundalk Marine Terminal ("DMT"), where the Decedent worked as a longshoreman from 1969 to 2011.  According to plaintiffs, the Decedent developed lung cancer as a result of his exposure to COPR.

Defendant has moved to dismiss (ECF 10), pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum of law (ECF 10-1) (collectively, the "Motion") and exhibits.  ECF 10-2; ECF 10-3.  According to defendant, plaintiffs' claims are "time-barred by Maryland's 20-year statute of repose . . . ."  ECF 10-1 at 12.  *See* Md. Code (2013 Repl. Vol., 2016 Supp.), § 5-

108(a) of the Courts and Judicial Proceedings Article ("C.J.").  Plaintiffs oppose the Motion (ECF 13, "Opposition") and defendant replied.  ECF 14.

On December 5, 2016, Honeywell submitted a "Notice of Supplemental Authority" (ECF 15), notifying the Court of the Fourth Circuit's decision in *Leichling v. Honeywell International, Inc.*, ____ F.3d ____, 2016 WL 7030628 (4th Cir. Dec. 2, 2016).  Honeywell argues that the Fourth Circuit's opinion in *Leichling* "compels dismissal of this case . . . ." *Id.* at 2.  Plaintiffs responded on December 6, 2016, arguing that the *Leichling* case is distinguishable on several grounds.  ECF 16.  Defendant replied on December 7, 2016.  ECF 17.

The Motion is fully briefed and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  I conclude that the case *sub judice* is squarely governed by *Leichling*, and I shall grant the Motion.

## I.     Factual Background[1]

From 1845 until 1954, the Mutual Chemical Company, which, through mergers and acquisitions was subsequently acquired by Honeywell, operated "one of the world's largest chromium ore processing and chromium product manufacturing plants on a site "commonly known today as Harbor Point," in the Fells Point neighborhood of Baltimore.  ECF 1, ¶¶ 7-8. "Honeywell's chromium ore processing and chromium production were waste-intensive processes that generated massive quantities of toxic, carcinogenic, chromium-contaminated COPR wastes." *Id.* ¶ 9.

The DMT was established around 1960 by the Maryland Port Authority, which is now the Maryland Port Administration." *Id.* ¶ 11.  Honeywell owned approximately 85 acres of land

---

[1] The facts described in this section are taken from the Complaint.  ECF 1.  Based on the procedural posture of the case, the facts in the Complaint are assumed to be true.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

adjacent to the DMT, which originally consisted of marshland and shallow water abutting the Patapsco River.  *Id.*  Beginning around 1920, Honeywell used that site to "dispose of the vast quantities of toxic, hexavalent-chromium-contaminated COPR waste generated at its Harbor Point plant."  *Id.* ¶¶ 6, 11.  And, at least since the 1930s Honeywell knew of the carcinogenic dangers posed by COPR.  *Id.* ¶ 10.  As a result of defendant's disposal of COPR, Honeywell expanded the acreage of its property.  *Id.*

In 1967, the Maryland Port Administration acquired Honeywell's 85 acres of land.  *Id.* ¶ 12.  As part of the agreement, Honeywell retained the right to use five acres to dump COPR. *Id.*  Until 1976, Honeywell continued to use the site to dump COPR.  *Id.* ¶¶ 13-14.  In 2006, environmental investigators estimated that Honeywell had dumped approximately 2.5 million cubic yards of COPR, or 3.25 million tons, covering a 148 acre area.  *Id.* ¶ 15.

Honeywell's COPR waste contained "substantial quantities of toxic, hexavalent chromium."  *Id.* ¶ 16.  "Hexavalent chromium is known to cause lung cancer, an increase in stomach tumors and cancers in humans and animals exposed to hexavalent chromium via ingestion, and other cancers."  *Id.* ¶ 23.  In 1972, Honeywell pled guilty to 12 counts of a federal criminal indictment charging violations of the Rivers and Harbors Appropriation Act of 1899. *Id.* ¶ 27.  It paid a substantial fine because of its pollution activities.  *Id.*

As noted, the Decedent worked as a longshoreman at the DMT from 1969 until his retirement in 2011, and worked adjacent to the site that Honeywell used to dump its COPR waste.  *Id.* ¶¶ 1, 6.  While the Decedent worked at the DMT, "large volumes of COPR waste were frequently left in uncovered piles for extended periods of time at and adjacent to the docks, piers, wharves and other work areas at the facility."  *Id.* ¶ 17.  Environmental factors, including wind and erosion, "caused hazardous substances to spread throughout the DMT, so that workers,

including [the Decedent], were exposed to hexavalent chromium and other hazardous substances contained within the dust, dirt, and other releases from the disposal areas." *Id.* ¶ 19.  In addition, "hexavalent chromium-contaminated groundwater leaked into the drinking water distribution system . . . ." *Id.* ¶ 21.

The Decedent was diagnosed with lung cancer on April 23, 2013.  *Id.* ¶ 6.  He died on May 19, 2013, at the age of 62.  *Id.*

## II.     Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  But, a plaintiff need not include "detailed

factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th.Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555–56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Leichling*, *supra*, at *2; *Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

### III.    Maryland's Statute of Repose

Defendant argues that plaintiffs' claims are time-barred under Maryland's statute of repose.[2] The Maryland statute of repose is codified at C.J. § 5-108(a). It states, *id.*:

---

[2] Jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1332. Maryland substantive law applies. *See* 28 U.S.C. § 1652; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Leichling*, *supra*, 2016 WL 7030628, at *2; *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016) (same); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (same).

[N]o cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

Thus, C.J. § 5-108(a) "bars suits in which (1) a plaintiff's alleged injuries resulted from an 'alleged defective and unsafe condition of an improvement to real property'; and (2) 20 years have elapsed 'since the entire improvement first bec[ame] available for its intended use.'" *Leichling*, 2016 WL 7030628 at *2 (quoting *Rose v. Fox Pool Corp.*, 335 Md. 351, 358, 643 A.2d 906, 909 (1994)) (some internal quotations omitted) (alteration in *Rose*).[3]

In *Leichling*, *supra*, 2016 WL 7030628, the Fourth Circuit reviewed the origin of the statute.  It explained, *id.* at *2:

> In the 1960s and 1970s, the demise of privity of contract as a defense and the introduction of the discovery rule increased liability for defective or unsafe conditions in improvements to real property. See Rose v. Fox Pool Corp., 335 Md. 351, 643 A.2d 906, 912–13 (1994). In response, states enacted statutes protecting those who would be particularly susceptible to claims arising from such improvements; Maryland's statute of repose is one such statute. *See id.*

The question here turns on the meaning of "an improvement to real property . . . ."  In *Leichling*, *supra* at *3, the Court said: "To determine whether an item is an 'improvement,' courts apply a 'common sense' test . . . ."  That test "defines an improvement as

> '[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.'"

*Id.* (quoting *Rose*, 335 Md. at 376, 643 A.2d at 918).

---

[3] Asbestos is expressly excluded from protection under the Maryland statute.  *See* C.J. § 5-108(d)(1).

"In making this determination, courts consider 'the nature of the addition or betterment, its permanence and relationship to the land and its occupants, and its effect on the value and use of the property.'"   *Id.* (quoting *Rose*, 335 Md. at 376, 643 A.2d at 918).   Further, the *Leichling* Court stated, *id.*:

> Courts should not "artificially extract each component from an improvement to real property and view it in isolation." Hickman, ex rel. Hickman v. Carven, 366 Md. 362, 784 A.2d 31, 38 (2001) (quoting Hilliard v. Lummus Co., 834 F.2d 1352, 1356 (7th Cir. 1987)). Instead, an item may be "an improvement if it is an integral component of a project that itself would qualify as an improvement." *Id.*[]

## IV.   Discussion

Honeywell argues that Maryland's statute of repose bars this suit.   *See* ECF 10-1.   As noted, the statute bars suits where (1) plaintiffs' alleged injuries resulted from an alleged defective and unsafe condition of an improvement to real property, and (2) twenty years have elapsed since the entire improvement first became available for its intended use.   *See Leichling*, 2016 WL 7030628 at *2; *Rose*, 335 Md. at 360, 643 A.2d at 910.

According to Honeywell, the expansion of the land at the DMT that resulted from the disposal of the COPR constituted an improvement to real property, as defined by the statute. ECF 10-1 at 13-18.   Honeywell claims that "the COPR fill 'facilitat[ed]' the construction of the Marine Terminal expansion on land that otherwise would have been unusable by reclaiming the marshland and shallow waters surrounding the Patapsco River and 'expanding the acreage' available for development and commercial use."   *Id.* at 17 (quoting ECF 1 ¶ 11).   Moreover, Honeywell asserts that "the fill made the property suitable for future use and therefore constitutes an 'improvement' under section 5-108(a) . . . ."   *Id.*   In addition, defendant argues that, even if the COPR fill does not constitute an "improvement," that "the COPR fill comprised an integral

part of the Marine Terminal expansion and, indeed, fill was necessary to undertake the project." *Id.* at 19.  Thus, defendant states that the COPR fill should be considered an "improvement." *Id.*

With respect to the twenty-year time limit, defendant points out: "Plaintiffs concede that the use of COPR fill material for the Marine Terminal ended in 1976, with the expanded Marine Terminal ready for use thereafter."  ECF 10-1 at 12; *see* ECF 1 ¶ 14.  Defendant insists that when the Decedent was diagnosed and died in 2013, more than twenty years had elapsed since the improvement had first become available, satisfying the time requirement under the statute.  ECF 10-1 at 12; *see* ECF 1 ¶ 6.

In their Opposition, plaintiffs contend that the COPR fill did not constitute an "improvement" under the Statute.  ECF 13 at 14-31.  According to plaintiffs, the statute of repose requires that a party intend to "create a betterment" for something to constitute an improvement.  *Id.* at 15.  And, they claim that defendant did not intend to expand the acreage. Rather, it only "intended to dispose of carcinogenic waste."  *Id.* at 15-17.

Moreover, plaintiffs dispute that the COPR fill increased the site's value.  *Id.* at 17-21. They contend that it is a "false premise that using chromium waste to fill the marshland rendered the previously 'unusable' marshland 'suitable' for human use and development."  *Id.* at 17.  And, plaintiffs argue that because Honeywell is expected to expend $138 million to remediate its prior COPR disposal, of which $76 million has already been spent, the COPR fill cannot be considered to be an improvement.  *Id.* at 19-20.  Plaintiffs also assert that because Honeywell knew that the COPR waste was a carcinogen, which made the land unfit for human use, "there can be no finding of an improvement to real property for purposes of the statute of repose."  *Id.* at 23.

On December 2, 2016, while this Motion was pending, the Court of Appeals for the Fourth Circuit issued its decision in *Leichling v. Honeywell International, Inc.*, *supra*, 2016 WL 7030628. That case is virtually indistinguishable from the case *sub judice*. In *Leichling*, the Fourth Circuit determined that the COPR fill at the DMT constituted an "improvement" under Maryland's statute of repose. *Id.* at *4.

In *Leichling*, the plaintiffs were the surviving spouse and adult children of the decedent, who died from lung cancer in 2012 after working as a longshoreman at the DMT from 1973 through 2001. *Id.* at *2. The plaintiffs asserted, *inter alia*, a claim for wrongful death against Honeywell, arising out of the decedent's exposure to COPR at the DMT. *Leichling v. Honeywell International, Inc.*, No. RDB-14-2589, 2015 WL 5559916 at *1-2. As here, the defendant in *Leichling* moved to dismiss, arguing that Maryland's statute of repose barred plaintiffs' action. *Id*. at *1.

Judge Bennett concluded that Maryland's statute of repose applied. *Id.* at *3-5. In finding that the COPR fill constituted an improvement, Judge Bennett noted that, "[w]ith the COPR fill, former river and marshland was transformed into an active and thriving marine shipping terminal. This transformation increased the commercial value of the property." *Id.* at *4. The plaintiffs disagreed and appealed to the Fourth Circuit.

On appeal, the Fourth Circuit affirmed the dismissal of the case. *Leichling*, 2016 WL 7030628. It stated, *id.* at *4: "Here, like the district court, we are satisfied that Appellee's use of COPR to expand and develop the Dundalk Marine Terminal is—if not an improvement to real property standing alone—at least an integral component of the project."

As to the plaintiffs' argument that defendant's dumping of COPR made the land unsuitable for human use, the *Leichling* Court said, *id*:

[N]either the statute's text nor its legislative history support this theory as grounds for rendering the statute inapplicable. The language of the statute does not except hazardous conditions, much less known hazardous conditions. Indeed, such an exception would swallow the rule, which only applies to an "alleged defective or unsafe condition." § 5–108(a).

The appellate court also rejected the plaintiffs' contention that the COPR fill decreased the land value. It stated, *id.*:

The "common sense" test Maryland courts derive from the statute . . . belies this assertion. <u>Rose</u>, 643 A.2d at 918. Appellants' allegations establish that Appellee utilized COPR fill to create a vast 85-acre parcel and transferred the parcel to the Maryland Port Authority, which used—and continues to use—the parcel as an active marine terminal. This expansion thus bestowed greater utility to both Appellee and the Maryland Port Authority, *see id.* regardless of the wisdom of using hazardous materials to exact the expansion.

The Fourth Circuit concluded that, "viewing the expansion as a whole rather than the COPR fill 'in isolation,' the record establishes that the fill was, in fact, an 'integral component' to developing the parcel for its use as the Marine Terminal." *Id.*

After the Fourth Circuit issued its opinion in *Leichling*, defendant submitted a "Notice of Supplemental Authority" (ECF 15), arguing that the Fourth Circuit's opinion "compels dismissal of this case . . . ." *Id.* at 2. Plaintiffs submitted a "Response to Notice of Supplemental Authority" on December 7, 2016. ECF 16. In their response, plaintiffs grasp at straws in an effort to distinguish the underlying case from *Leichling*.

In particular, plaintiffs assert that the district court in *Leichling* did not consider the fact that the COPR dumping violated the River & Harbors Act (*id.* ¶¶ 2-3); that the complaint in *Leichling* included information about the COPR fill that was not included in the current complaint (*id.* ¶ 4); and the plaintiffs in this case, unlike in *Leichling*, demonstrated that the dumping of COPR decreased the site's value. *Id.* ¶¶5-7.

I am not persuaded that any of the alleged distinctions between this case and *Leichling* alter the controlling effect of the *Leichling* decision.

First, the Fourth Circuit considered and rejected the argument that the statute of repose is not applicable because the disposal of the COPR was illegal. See *Leichling*, 2016 WL 7030628 at *4 (discussing the significance of the legal status of the improvement); *see also* Brief for Appellant at 7, 23-24, *Leichling*, 2016 WL 7030628 (No. 15-2263), 2015 WL 9244094.

Second, plaintiffs point to the alleged difference in the language of the complaints. According to plaintiffs, in the complaint in *Leichling* the plaintiffs stated that that Honeywell "'utilized COPR fill to create a vast 85-acre parcel . . . .'" ECF 16 at 3. Here, plaintiffs stated in their Complaint that defendant "unintentionally expand[ed] the acreage of its property." ECF 1 ¶ 11. It is undisputed that the COPR expanded the acreage, regardless of intent. This is a distinction without a difference.

Finally, the *Leichling* Court also rejected the plaintiffs' arguments regarding the alleged decrease in value of the property. *Leichling,* 2016 WL 7030628 at *4. It said, *id.* at *4: "Appellants further argue the use of COPR has decreased the value of the land in comparison to its hypothetical value with less hazardous fill. . . .  The 'common sense' test Maryland courts derive from the statute, however, belies this assertion." *See also* Brief for Appellant at 17-19, *Leichling*, 2016 WL 7030628 (No. 15-2263), 2015 WL 9244094.

## V.  Conclusion

In my view, the Fourth Circuit's recent decision in *Leichling* compels dismissal of this case, which is virtually on all fours with *Leichling*. The Maryland statute of repose, C.J. § 5-108(a), bars the claims brought by plaintiffs. Therefore, I shall GRANT defendant's Motion to Dismiss (ECF 10), with prejudice.


Date:   December 13, 2016                          _____/s/_____

                                                   Ellen L. Hollander
                                                   United States District Judge